UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MONICA L. CROX ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | 1:14-CV-254-HSM-WBC |
| vs. ) | |
| ) | |
| UNUM GROUP CORPORATION ) | |
| ) | |
| *Defendant.* ) | |

REPORT AND RECOMMENDATION

I. Introduction

The Plaintiff's motion for entry of judgment [Doc. 18] is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), to obtain judicial review of a denial of long term disability (LTD) benefits pursuant to a welfare benefit plan (the Plan) under which Plaintiff was covered by virtue of her employment with Catholic Health Initiatives in Chattanooga, Tennessee. The issues before the Court are the applicable standard of review and whether Defendant erred in finding Plaintiff capable of sedentary work. The undersigned finds the Plan unambiguously provides for arbitrary and capricious review by Defendant and Defendant did not err in finding Plaintiff is not precluded from sedentary work due to her physical impairments. Consequently, it is RECOMMENDED that Plaintiff's motion for entry of judgment be DENIED and judgment be entered in favor of the Defendant.

1

II. Facts

*A. Relevant Policy Provisions.*

The Policy for disability benefits was issued by Defendant Unum through Plaintiff's employer, Catholic Health Initiatives. As applicable here, the Policy states:

> You are disabled when Unum determines that:
>
> > (1) You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> >
> > (2) You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.
>
> You must be under the regular care of a physician in order to be considered disabled.

(R. 125).[1] With regard to a disability based on mental illness, the Policy states:

> The lifetime cumulative maximum benefit period for all disabilities due to mental illness and disabilities based primarily on self-reported symptoms is 12 months.

(R. 131). The Policy defines "mental illness" as:

> … a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress.

(R. 140). There appears to be no dispute that Plaintiff can no longer receive benefits under the Plan if she is totally disabled in whole or in part due to a mental illness.

---

[1] All citations to the administrative record are denoted as R. __ followed by the page number. The administrative record is found at Court Doc. 16.

2

*B. Plaintiff's Claim for Benefits.*

Plaintiff Monica Crox is 34 years old and was formerly employed as a nurse at Memorial Hospital in Chattanooga, Tennessee. Her medical history reflects a multitude of reported symptoms and conditions. In June 2011, Plaintiff experienced weight loss that she attributed to "increased stress due to going through a divorce." (R. 346). Subsequently, her complaints increased, and by Fall of 2011, she complained of, among other things, slurring of speech, back pain, shortness of breath, osteoarthritis, weakness, reflex sympathetic dystrophy, neuromuscular disease, renal insufficiency, hypertension, insomnia, headaches, kidney stones, depression, and anxiety. (R. 344). Plaintiff submitted her claim to Unum on January 25, 2012, in which she claimed a disability as of September 27, 2011. (R. 286). At that time, she claimed to have suffered transient ischemic attacks (TIA) resulting from autonomic dysfunction, and her reported symptoms included headaches, slurred speech and blurry vision. (R. 86). She submitted an attending physician's statement ("APS") from Dr. Mark McKenzie (internal medicine) dated October 11, 2011. (R. 86-88). The APS reflected a diagnosis of TIA. *Id*. Unum also received records from Dr. David Gbadebo (cardiologist), which indicated that Plaintiff suffered from hypotension, sinus tachycardia and a possible hormonal disorder. (R. 194-196). Dr. Gbadebo opined that Plaintiff could possibly return to work if her systolic blood pressure could stay consistently above 110 mm Hg. *Id*.

Based on information provided by Dr. McKenzie and Dr. Gbadebo (R. 501-502, 542-543, 466), Unum agreed to pay benefits to Plaintiff for the period from March 26, 2012 through July 6, 2012, finding she could not perform her current occupation as a nurse. (R. 561-564). Plaintiff appealed Unum's determination, asserting she remained disabled beyond July 6, 2012.

3

Unum initially denied Plaintiff's appeal but reconsidered the decision following the receipt of an October 19, 2012 letter from Dr. McKenzie's Nurse Practitioner, Shirley Spears. (R. 714). The letter from Ms. Spears stated Plaintiff was unable to work due to weakness and her autonomic nervous system dysfunction. The letter further noted that Plaintiff was being referred to a specialist at the University Hospital, Birmingham, Alabama for a "more definitive diagnosis." *Id*. After further evaluation of the claim, including a review by Unum medical consultant Dr. Jacob Martin, Unum reversed its decision, concluding that the totality of Plaintiff's various complaints of pain, chronic fatigue, and autonomic dysfunction, rendered her unlikely to perform her occupation at the medium demand occupation level required for a registered nurse. (R. 936, 942-943). Unum thereafter paid Plaintiff's benefits through March 25, 2014, which was the maximum 24-month benefit provided under the "regular occupation" Policy provision.[2]

During the time it was paying Plaintiff under the "regular occupation" definition of disability under the Policy, Unum continued to obtain and review medical records and investigate Plaintiff's claim. Despite Plaintiff's claims of diagnoses of lumbosacral spondylosis, radiculitis, and spinal stenosis, her diagnostic imaging tests, summarized below, failed to support such conditions:

- MRI L-spine, 9/9/11: "Normal MRI lumbar spine. No degenerative disk disease, focal disk protrusion, or spinal stenosis." (R. 351).
- MRI L-spine, 9/27/12: "Normal lumbar spine." (R. 866).
- MRI T-spine, 3/4/13: "Negative." "No significant degenerative changes in the thoracic spine." (R. 1019).
- MRI-C-spin 9/17/12: "Slight degenerative disc changes at C3-4 and C4-5 …. No significant canal or foraminal stenosis." "Otherwise unremarkable cervical spine MRI."

---

[2] Plaintiff's regular occupation as a registered nurse falls within the "medium work" physical demand level, which includes lifting, carrying, pushing-pulling 20-50 lbs. occasionally; 10-25 lbs. frequently or up to 10 lbs. constantly; sitting occasionally, standing frequently, walking occasionally, keyboarding occasionally, stooping occasionally, handling frequently, reaching frequently, and fingering occasionally. (R. 609, 696).

(R. 667).

Although Plaintiff's medical records from pain management physicians including Dr. Dreskin refer to these conditions as "diagnoses," it is unclear regarding the basis for this diagnosis given the normal MRI's. Additionally, Dr. Dreskin had previously stated in a letter dated March 21, 2012 that Plaintiff's pain associated with "lumbar spine stenosis, lumbar radiculopathy, lumbar facet syndrome, fibromyalgia, reflex sympathetic dystrophy of the lower limb, and osteoarthritis … do[es] not limit Ms. Oetting's (Plaintiff's) ability to work, though they might impose some restrictions." Dr. Dreskin requested that Unum ask Plaintiff's "autonomic specialist" regarding Plaintiff's work status "as it is her autonomic dysfunction that is currently preventing her from returning to work." (R. 378).

In the fall of 2012, Plaintiff's treating neurologist, Dr. Kodsi, referred Plaintiff to Dr. Natividad Stover, neurologist and movement disorder specialist, at the University of Birmingham Medical Center for an evaluation of Plaintiff's complaints of autonomic dysfunction. (R. 975-76). Dr. Stover examined Plaintiff on December 20, 2012. At that time, Plaintiff reported complaints of, among other things, frequent headaches, dizziness, tremors, confusion, slurred speech, and low blood pressure. *Id.* Dr. Stover diagnosed Plaintiff with conversion disorder/psychogenic movement disorder.[3]

> Patient with multiple complaints affecting all the systems in the body. Her tremor is totally distractable [sic] and I told her that the phenotype is NOT consistent with familiar tremor, Parkinson's disease or myoclonus. Most of her symptoms fluctuate, they are either abscent (sic) or present in different

---

[3] A conversion disorder, which is a subset of a somatoform disorder, is a mental health condition in which a person shows psychological stress in physical ways. The condition was so named to describe a health problem that starts as a mental or emotional crisis – a scary or stressful incident of some kind – and converts to a physical problem. *See* http://www.mayoclinic.org/diseases-conditions/conversiondiscorder/ basics/definition/con-20029533. Conversion disorder is considered a psychiatric disorder. *See* A. Psychiatric Ass'n., *The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition*.

5

severity. She has low BP but now controlled with the use of medications and still having the rest of the symptoms. One brain MRI reported to have minimal displacement of the tonsils, but a C spine MRI showed no evidence of Chiari malformation.

She also has a diagnosis of polycystic ovary disease, but not phenotype for this problem and she does not know if hormonal levels have been checked. She also has blood in the urine that she has been told that they will no (sic) evaluate as soon as his (sic) renal function test are normal. Recently she was diagnosed with a lung lesion that will be followed. She was not a primi (sic) baby. She went [through] a complicated divorce recently. **Her neurologic exam is normal and what is abnormal was distractable**. [sic] Overall, her constellations of symptoms, negative evaluation, presentation, evolution, etc. are very typical of a conversion disorder. * * * I spent more than 1 hour with the patient and reassured her that she does not have MS, Parkinson's disease or any other neurodegenerative disease. She is very frustrated about the lack of findings, [a] characteristic that is also frequent in conversion disorders. **I think that she also will benefit from psychotherapy.**

(R. 979-980) (emphasis added). Dr. Stover's finding that Plaintiff's tremor condition was distractible was consistent with Dr. Kodsi's and Dr. Trudell's findings. Dr. Kodsi's medical notes of September 13, 2012 state, in pertinent part: "Tremor: mild right greater than left positional tremor that disappears with distraction." (R. 647). Dr. Trudell's records similarly note on July 15, 2013: "There is an intermittent volitional tremor of the upper and lower extremities when being officially tested." (R. 1286).

Records from Dr. Dreskin's office dated December 18, 2012, discuss a request that Plaintiff undergo psychiatric treatment:

> Patient was instructed after last visit that she must seek treatment of a psychiatrist or we would not continue to treat her. At today's visit, she states she is seeing a "counselor" but is not seeing a psychiatrist. Instructed patient that she must see a psychiatrist but she can continue to see the counselor if she wishes. Patient became upset and stated she would transfer to another pain management clinic if we required her to see a psychiatrist. During patient's multiple hospitalizations in the past several months, all consulting MDs suggested a psych referral. After patient left room she stopped Dr. Dreskin in the hall and stated that if she had to see a psychiatrist she would be leaving our practice. Dr. Dreskin states she needed to do what was best for her care and that transitioning to another pain clinic may be best.

6

(R. 1064). There are no psychiatric records in the administrative record to indicate Plaintiff sought psychiatric treatment.

On September 30, 2013, plaintiff underwent neurodiagnostic autonomic testing after being referred by Dr. Trudell. (R. 1431-143). On October 24, 2013, in his treatment notes, Dr. Trudell summarized the test results as showing "evidence of a small fiber neuropathy" and "moderate generalized decreased autonomic function." (R. 1956). He also stated Plaintiff continues to be tachycardic and had a current pulse of 120. During her office visit of October 24, 2013, she complained to Dr. Trudell of being so dizzy she feels she needs to "drop to the floor" and stated she is often light headed when walking. She reported complex regional pain syndrome in her left foot and irritable bowel syndrome and back pain. She had a mild postural tremor; strength and movement were within normal range and reflexes were normal and symmetrical. Dr. Tudell's impression was of an "[u]nusual constellation of fibromyalgia with some autonomic dysfunction," "chronic fatigue syndrome and some back pain that is probably due to some persistent cycle of muscle spasm." (R. 1956). She was to continue Savella and Dr. Trudell would refer her to the "block clinic for her low back pain and for follow-up." (R. 1956). Plaintiff was seen by Nurse Practitioner Jennifer Sparks in Dr. Trudell's office on January 14, 2014. She reported a benign essential tremor managed on amantadine 100 mg daily, moderate headaches controlled by Topomax, and burning and tingling in hands and feet related to Topomax. Current medications included Methadone, Floinef, Nexium, Lyrica, Glucophage, Savella, amantadine, morphine, Topomax, diazepam, Dulera, Integra, Hydrocodone, lidocaine patches, and Albuterol inhaler. (R. 1953).

In a decision dated July 1, 2014, the Social Security Administration granted Plaintiff's disability claim based on "stuttering, tremors, disorder of the autonomic nervous system, Reflex Dystrophy, fatigue, anemia and stomach ulcers." (R. 2267). The Social Security Administration stated,

> The medical evidence shows the combination of your physical conditions severe enough to be disabling.
>
> \* \* \*
>
> Although you experience depression, records show that you are able to communicate with others, act in your own interest and perform most ordinary activities.
>
> \* \* \*
>
> The records show that your condition was not severe enough to keep you from working as far back as 9-27-11. After careful consideration of all the evidence, we concluded that you became disabled as of 5-1-13. This is the earliest date the records show your condition was severe enough to keep you from working.

(R. 2267). There are no further reasons given for granting the claim in the decision.

During the course of its review, Unum contacted Plaintiff's treating physicians to inquire about Plaintiff's work capacity and whether she could engage in a sedentary occupation. Unum received the following responses:

• Dr. Kodsi (Neurology- 9-25-13), Dr. Cooper (Cardiology- 12-4-13), Dr. Henson (Urology – 12-4-13), Dr. Phillippose (Gastroenterology- 12-4-13) and Dr. Newman (OB/GYN - 9-27-13) completed questionnaires by Unum and opined that Plaintiff was capable of working fulltime in a sedentary capacity. (R. 1349-1351 (Kodsi); R. 1618-1621 (Cooper); R.1644-1648 (Henson); R. 1597-1600 (Phillippose); R. 1359-1362 (Newman).

• Although Plaintiff requested that Dr. Odem (pain management) document her inability to work (R. 1736), Dr. Odem advised Unum on January 6, 2014, his office was unable to comment on Plaintiff's range of motion and functional limitations, and that Unum would need to obtain this information from Plaintiff's primary care doctor. Dr. Odem's office also advised Plaintiff was no longer treating with Dr. Odem. (R. 1769, 1771).

8

- In January 2014, Unum contacted Dr. McKenzie's office and was advised that Dr. McKenzie did not treat Plaintiff; rather, Plaintiff was treated by his Nurse Practitioner, Shirley Spears. Dr. McKenzie's office indicated that it could not comment regarding Plaintiff's restriction without a follow up appointment. (R. 1856).

- Dr. Enjeti (Pulmonology –12-4-13) advised Unum that he had not seen Plaintiff since August 22, 2013, and could not respond until and unless Plaintiff returned to his office for an examination. (R. 1852).

- Dr. Ballard (Orthopedic –2-14-14) deferred his opinion to Dr. Trudell (Neurology) and Dr. Odem. (R. 2037).

- On December 4, 2013, Unum sent its questionnaire to neurologist Dr. Trudell seeking his opinion regarding Plaintiff's restrictions. The questionnaire was completed by Dr. Trudell's Nurse Practitioner, Jennifer Sparks. Ms. Sparks responded to the Unum questionnaire by stating that Plaintiff's "essential hand tremor makes it difficult for her to work with her hands; worsens with activity." (R. 1848). However, when asked regarding Plaintiff's restrictions and limitations, Sparks stated, "I have only seen this patient once and I am unsure." (R. 1847).

- On February 18, 2014, Unum's internal physician, Dr. T. Edward Collins (D.O.) (board-certified neurology), wrote to Dr. Trudell and Ms. Sparks seeking clarification of both Plaintiff's condition and Ms. Sparks' previous response to Unum's questionnaire. (R. 1893). Despite several telephone follow up inquiries by Unum, neither Dr. Trudell nor Ms. Sparks responded to Dr. Collins' inquiry. (R. 1945-47).

- Dr. Ball/Rebecca Payne's office (Pain Management- February and March 2014) advised Unum that they did not give Plaintiff any restrictions or limitations and they deferred to Plaintiff's other attending physicians. (R. 1969).

In September and March of 2014, a vocational rehabilitation specialist hired by Unum reviewed Plaintiff's restrictions and limitations and found there were sedentary jobs which Plaintiff could perform in the Chattanooga area: dispatcher, service order clerk, insurance clerk, and a patient relations representative.

Unum medical consultant, Dr. T. Edward Collins, D.O. (board certified neurology) reviewed Plaintiff's claim including the medical evidence from 16 medical providers and

concluded Plaintiff was not precluded from sedentary work on the basis of her physical conditions, but she was disabled on the basis of mental illness.

> When viewed as a whole, the claimant's numerous medically unexplained symptoms despite multiple, extensive evaluations by many specialty healthcare providers is most consistent with a behavioral health condition, probably somatoform disorder. She has many symptoms that appear to be distressing to her and have resulted in significant disruption in her daily life. She has demonstrated excessive behaviors related to the somatic symptoms, having devoted excessive time, energy, and resources to her health concerns for at least 2 years. It is evident that the claimant is resistant to accept a behavioral explanation for her symptoms and appears to be at least equally resistant to consulting with a behavioral health professional to explore that possibility. Therefore, it is likely that the claimant would encounter or at least perceives to encounter difficulty effectively performing under stress, dealing with people, planning activities of others, and maintaining the concentration necessary to perform a variety of clerical duties and pay attention to detail.

(R. 1983). Dr. Allen Neuren (board certified in neurology and psychiatry) also reviewed plaintiff's claim and medical records for Unum and reached the same conclusion as Dr. Collins reasoning:

> Insured is claiming to be impaired due to numerous and various symptoms. She has been opined to have autonomic dysfunction which is poorly documented. She is reporting chronic diffuse pain for which she is receiving excessive amounts of controlled substances along with several other medications. Allowing for hospitalizations in September and October of 2012, it should be noted that many of her complaints are otherwise likely secondary somatization or [due] to the medications she is receiving including headaches, dizziness, fatigue, nausea, slurred speech, constipation and reported urinary retention. She is reporting tachycardia, but heart rate is usually normal.
>
> She has reported back pain and difficulty getting in and out of cars, but lumbar MRI was normal and during surveillance, she was able to get in and out of her car with no difficulty. Radiographic studies have failed to demonstrate the presence of hip disease.
>
> Insured was evaluated by a neurologist who felt most of the findings were a manifestation of a conversion disorder including the tremor. Claimant's original pain physician recommended mental health treatment as a condition of ongoing care, but the insured refused and sought treatment elsewhere.

10

> Insured had been worked up at Vanderbilt and told she did not have autonomic dysfunction. At the time of the tilt table test in 2013, insured requested the test be terminated due to complaints of dizzy, nausea, and numbness. There is no indication the insured went through a washout period from the numerous medications she was taking. There was no documentation of vital signs at the time the testing was terminated.
>
> At this time, if there was significant problems with blood pressure, this should be amenable to pressor agents (such as she is taking), hydration, and compression hose if needed. She should be fully capable of functioning in a sedentary capacity allowing for periodic changes of position, standing and moving around to avoid venous pooling.

(R. 2013-14).

Unum denied Plaintiff's claim under the any occupation standard on May 13, 2014. Plaintiff appealed and submitted a letter from her pain management doctor, Dr. Dreskin, dated April 24, 2014, in which Dr. Dreskin stated Plaintiff has "genuine, medical pathology and has genuine, chronic pain." (R. 2089). However, he also indicated he was no longer treating Plaintiff, and he deferred to her primary care physician for a determination of her work restrictions. (R. 2089).

Physician consultant Dr. Bartlett (board certified family physician) reviewed Plaintiff's claim and records and concluded she had some level of autonomic dysfunction, but it was "well treated with present medications and hydration" and did not preclude her from full-time sedentary work. (R. 2278). He also opined her reported physical symptoms were out of proportion to the medical findings and her demonstrated ability to drive and to manage her own affairs. (R. 2276). He did not find any side effects from her medications to be disabling. (R. 2279). His discussion included a review of her mental health issues and the concern on the part of several different physicians that many of plaintiff's symptoms are exacerbated or arise from a somatic disorder, and he opined that her mental health issues could cause disability. (R. 2276-2278). Unum denied Plaintiff's appeal, and this action followed.

11

III. Analysis

*A. Standard of Review*

The Sixth Circuit has ruled that summary judgment procedures are inapposite to ERISA actions to recover benefits and, thus, should not be utilized in their disposition. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Instead, the *Wilkins* court held the court should conduct a review based solely on the administrative record that had been before the plan administrator/decision maker. In doing so, the court should consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record. With certain narrowly drawn exceptions, which do not apply to the instant case, review is restricted to the evidence presented to the administrator. *McClain v. Eaton Corp. Disability Plan,* 740 F.3d 1059, 1064 (6th Cir. 2014); *Wilkins*, 150 F.3d at 619; *Marchetti v. Sun Life Assur. Co. of Canada*, 30 F.Supp.2d 1001, 1004 (M.D. Tenn. 1998).

In the ERISA context, if *de novo* review is required, a court "is bound by the provisions of the documents establishing an employee benefit plan without deferring to either party's interpretation." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994); *see also Javery v. Lucent Technologies, Inc. Long Term Disability Plan*, 741 F.3d 686, 700 (6th Cir. 2014) (holding that when the standard of review is *de novo*, the plan administrator's decision is entitled to no deference or presumption of correctness.) Rather, the role of a reviewing court in applying the *de novo* standard is to determine whether the administrator made a correct decision. *Perry v. Simplicity Eng'g, a Div. of Lukens General Indus., Inc.*, 900 F.2d 963, 966 (6th Cir. 1990); *Javery,*741 F.3d 700.

The arbitrary and capricious standard is one of "extremely deferential review." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). The plan administrator's

12

decision must be upheld as long as the plan offers a reasoned explanation based on the evidence. *Id.* at 1065; *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 165 (6th Cir. 2007); *McDonald v. Western-Southern Life Ins. Co*, 347 F.3d 161, 169 (6th Cir. 2003). However, while the arbitrary and capricious standard is deferential, "it is not, however, without some teeth." *McDonald,* 347 F.3d at 172. "Deferential review is not no review," and "deference need not be abject." *Id.* The court is obligated to make a review of both the quality and quantity of the medical evidence and the opinions on both sides of the issues. *Id.; Cooper,* 486 F.3d at 165.

Moreover, any application of the arbitrary and capricious standard must take into account conflicts of interest held by the decision-maker. A conflict of interest exists where a defendant decision maker also funds the plan from which benefits will be paid. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Metropolitan Life Ins. Co. v. Glenn*, 549 U.S. 1337 (2008). Where the same entity "both funds and administers the plan . . . it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." *Killian v. Healthsource Provident Administrators, Inc*., 152 F.3d 514, 521 (6th Cir. 1998); *accord, Gismondi v. United Technologies Corp.*, 408 F.3d 295, 299 (6th Cir. 2005).

Plaintiff bears the burden of proving that she is entitled to benefits under the terms of the Policy. *Javery,* 741 F.3d at 700-01; *Rose v. Hartford Fin. Servs. Group, Inc.,* 268 Fed. Appx. 444, 452 (6th Cir. 2008); *Tracy v. Pharmacia & Upjohn Absence Payment Plan,* 195 Fed. Appx. 511, 516 n. 4 (6th Cir. 2006).

When reviewing pursuant to ERISA a plan administrator's decision to grant or deny benefits, a court applies a *de novo* review unless the plan gives the plan administrator discretion; in that instance, the court reviews the decision to determine if it is arbitrary and capricious.

13

*Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Plaintiff asserts that the provision in the Plan relating to the standard of review is "self-contradicting" and ambiguous therefore requiring that the provision be construed in favor of Plaintiff to apply the *de novo* standard if review. The provision at issue states in relevant part:

> Discretionary acts. The plan acting through the plan administrator, delegates to UNUM and its affiliate UNUM Group discretionary authority to make benefit determinations under the plan. … All benefit determinations must be reasonable and based upon the terms of the plan and the facts and circumstances of each claim.
>
> Once you are deemed to have exhausted your appeal right under the plan, you have the right to seek Court review under section 502(a) of ERISA of any benefit determinations with which you disagree. The Court will determine the standard of review it will apply in evaluating those decisions.

(R. 149).

Plaintiff asserts it is contradictory for the provision to give discretion to the administrator but then require that the administrator's decision to be "reasonable." Plaintiff argues reasonableness is an objective standard incongruous to the arbitrary and capricious standard of review. Further, according to Plaintiff, "no explanation is provided as to what level of proof would arise to the level of "reasonable." Citing *Campbell v. Fortis Benefits Ins. Co*., 116 F. Supp.2d 937, 946-9047 (M.D. Tenn. 2000), Plaintiff continues, "[t]he failure to adequately define the level of proof required has been noted to require de novo review." (Plaintiff's Motion at 5, Page ID # 2380). Finally, Plaintiff argues the statement, "the Court will determine the standard of review" also contradicts the granting of discretion to the administrator. Plaintiff's arguments are not persuasive.

The policy in *Campbell* did not have an express provision which addressed the standard of review and it did not expressly grant the administrator "discretion" as does the policy at issue

14

in this case. Rather, it simply stated, "we will pay benefits at the end of each month (or shorter period) for which we are liable after we receive the required proof." *Id.* at 945. The court held this language was simply inadequate to convey discretion to the plan administrator. *Id.* at 945-46. On the other hand, the Sixth Circuit has often referred to reasonableness as the touchstone of the arbitrary and capricious standard. *See Price v. Bd. of Trustees of Indiana Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (Under the arbitrary and capricious standard of review, "we must uphold the administrator's decision if the administrator's interpretation of the Plan's provisions is reasonable") (citing *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *see also Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 300 (6th Cir. 2006) (under the arbitrary and capricious standard, "if MetLife's interpretation of the Plan's provisions is 'reasonable,' it must be upheld."); *Thacker v. Schneider Elec. USA, Inc.*, 547 Fed. Appx. 691, 695-96 (6th Cir. 2013) (finding the administrator's decision "reasonable" and therefore not arbitrary and capricious); *Wooden v. Alcoa, Inc.,* 511 Fed. Appx. 477, 482 (6th Cir. 2013) ("So long as there is evidence in the record to support a reasonable explanation to deny benefits, the decision is not arbitrary and capricious.") Thus, use of the word "reasonable" does not contradict the arbitrary and capricious standard nor is it so vague as to require application of the *de novo* standard.

Plaintiff asserts the statement that the court will determine the standard of review is inconsistent with any grant of discretion because, "[p]resumably, the Court would apply the reasonable standard contained in the policy language" and "reasonableness is an objective standard not subject to the discretion applicable to an arbitrary and capricious analysis." (Plaintiff's Motion at 6, Page ID # 2381). As discussed, however, a reasonable standard is completely consistent with the arbitrary and capricious review. The undersigned concludes

15

provision at issue expressly grants Unum discretion, and the correct standard of review in the instant case is arbitrary and capricious.

*B. Analysis*

Plaintiff asserts she is disabled as a result of Autonomic Dysfunction. The administrative record in this case at 2329 pages is formidable, but Unum has very capably discussed the medical evidence in its brief. A review of those physician's notes and records cited by the parties indicates plaintiff has some genuine physical impairments; however, Plaintiff has not met her burden to show she is completely disabled by them.

After receiving short term disability benefits for a period of two years because Plaintiff could not perform her medium level work as a nurse, the policy required Plaintiff to be disabled by physical impairment from performing any work, including sedentary level work, in order to continue receiving benefits.[4] Significantly, however, not one of Plaintiff's attending physicians has been willing to opine she cannot perform sedentary work. Even Dr. Trudell, her neurologist who characterized the neurological testing she received on September 30, 2013 as showing "moderate generalized autonomic function," was unwilling to opine she could not perform sedentary level work. On the other hand, Drs. Kodsi, Cooper, Henson, Phillippose, and Newman all opined she could perform sedentary work. Unum's consulting physicians who reviewed Plaintiff's medical records concluded the objective medical tests did not support the level of physical impairment Plaintiff was alleging, and a review of those tests referred to by the parties supports this conclusion. Spinal MRIs were largely normal with only slight degenerative disc changes. Neurological testing showed only "moderate generalized autonomic function." Many of Plaintiff's symptoms were self-reported, and several of her physicians concluded that many of

---

[4] The policy will provide disability benefits for mental impairments for only one year, and plaintiff had already received benefits for more than one year.

16

these symptoms were caused by a psychiatric or psychological condition. Her neurologists concluded her hand tremors were "distractible" or "volitional." Video observation of the Plaintiff showed that she could drive, walk, and smoke despite her assertions of overwhelming dizziness, tremors, and syncope.

Plaintiff notes that the Social Security Administration (SSA) found she could not perform sedentary work and was therefore disabled. However, the undersigned is not bound by that decision. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (citing *Hurse v. Hartford Life & Accident Ins. Co.*, 77 Fed. Appx. 310 (6th Cir. 2003)). While an administrator's failure to consider an SSA's decision granting benefits may be a factor in considering whether the decision was arbitrary and capricious, Unum's physician, Dr. Bartlett, clearly addressed Plaintiff's SSA award and determined that it did not include a review of the important findings by neurologist Dr. Stover as well as the observations shown by surveillance. (R. 2276). Furthermore, the decision lacks an in depth discussion of its reasons leaving the undersigned without persuasive reasons for the SSA's decision.

Unum had at least three of its own medical consultants, a board certified neurologist, a board certified neurologist and psychiatrist, and a board certified family physician, review Plaintiff's records. After a thorough discussion of Plaintiff's medical records, all opined she did not have physical impairments which would preclude sedentary work. Unum's vocational expert found there were sedentary level jobs in the Chattanooga area.

After a review of the evidence and, given that Plaintiff has not produced an opinion from a single physician to dispute the numerous opinions that Plaintiff is not precluded from sedentary work by her physical impairments, the undersigned concludes that Unum's decision to deny benefits was not arbitrary and capricious; rather, it was reasonable. *See e.g., Wilkins v. Baptist*

17

*Healthcare Sys., Inc.*, 150 F.3d 609, 614 (6th Cir. 1998) (affirming denial of disability benefits to the claimant on the ground that no physician has opined the claimant is disabled and the objective medical evidence does not establish disability); *see also Wooden v. Alcoa, Inc.*, 511 Fed. Appx. 477, 483-84 (6th Cir. 2013) (finding decision to deny disability benefits was not arbitrary and capricious where the administrator chose to credit six medical opinions over the claimant's treating physician.)

## IV. Conclusion

Absent a single physician's opinion that Plaintiff was not capable of sedentary work due to physical impairments to contradict the several physicians' opinions that Plaintiff is capable of sedentary work and given the extremely deferential standard of review applicable, it is RECOMMENDED[5] that Plaintiff's motion for judgment be DENIED and judgment be ENTERED in favor of Defendant.

S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).